## Case No. 15,845.

### UNITED STATES v. MYERS.

[1 Cranch, C. C. 310.] [1]

Circuit Court, District of Columbia. June Term, 1806.

#### ASSAULT.

It is an assault to double the fist and run it at another, saying, "If you say so again I will knock you down."

[Cited in State v. Painter, 67 Mo. 87.]

Presentment, for an assault on Jane McGrath. The evidence was that the defendant [Samuel Myers] doubled his fist and ran it towards the witness, saying, "If you say so again, I will knock you down."

Mr. Key, for defendant, contended that it was not an assault. The words explain the act, and show the intention not to be to commit a battery. It was like the case of the man putting his hand on his sword, and saying, "If it were not term time or assizes, I would kill you," &c.; and he moved the court to instruct the jury that it was no assault.

Mr. Jones, for the United States.

THE COURT, (nem. con.) refused to give the instruction.

Verdict, "Guilty." Fined five dollars.

---

## Case No. 15,846.

### UNITED STATES v. MYERS et al.

[3 Hughes. 239; 5 Reporter, 364; 24 Int. Rev. Rec. 44; 25 Pittsb. Leg. J. 143.] [2]

Circuit Court, E. D. Virginia. Feb. 7, 1878.

INTERNAL REVENUE — DISTILLERY — ASSESSMENT— TESTIMONY—NEW TRIAL.

1. In a suit by the government on a distiller's bond for the amount of an assessment made by the commissioner of internal revenue under section 3182, Rev. St. U. S., it is competent for the defendant to produce evidence to show the incorrectness of the assessment, and to contradict it, although he has not first appealed to the commissioner of internal revenue against the assessment.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 25 Pittsb. Leg. J. 143, and 5 Reporter, 364, contain only partial reports.]

2. Where the government, in such a trial, fails to show by positive evidence that frauds (which might as probably or more probably have been committed at the rectifying-house) were committed at the distillery, and the defendant, by all the testimony that could well be brought to establish a negative, shows that the frauds were not committed at the distillery, and that they were probably committed at the rectifying-house, and the jury refuses to find a verdict for the government merely on the presumption that the frauds were committed there, the court will refuse to grant a new trial asked for on the ground that the verdict for the defendant was against the law and evidence.

Action of debt. Plea of conditions performed.

This was an action of debt against the late firm of M. [Myer] & E. [Ezekiel] Myers, as distillers of spirits, in the second district of Virginia, and their sureties [William Loftin Williams, Solomon Benjamin, and William W. Myers]. It was brought for the recovery of $47,800 claimed for taxes due and unpaid, as shown by an assessment of the commissioner of internal revenue. It was tried on the 22d January, 1878, and a verdict found for the defendants, whereupon the United States attorney moved for a new trial. The action was brought to recover an amount shown by an "Assessment List, Special No. 2," to be due for taxes on 68,400 gallons of distilled spirits at 70 cents per gallon, accruing from May 1st, 1874, to February 10th, 1875, amounting to $47,800. This list is a large folio sheet and contains at the bottom of it a certificate in these words: "I hereby certify that, as authorized and required by law, I have made inquiries, determinations, and assessments of the taxes specified in the foregoing list, and find to be due the amount specified in columns 8 and 9, of said list, from the persons against whose names said amounts are respectively placed. D. D. Pratt, Commissioner. Internal Revenue Office, Washington, November 18, 1875." The taxes thus assessed are claimed to have been due over and above the taxes which were regularly paid by the distillers while they were engaged in business, from May, 1874, to March, 1875. At the trial the government presented this "assessment list" in evidence, and proved its authenticity. It then insisted that this document was a final "determination" by a competent authority of the amount of taxes still due and unpaid by these distillers, for which they and their sureties were bound; and claimed that it was not necessary on its part to bring forward other evidence to show that the amount of taxes thus assessed and determined was in fact due; and, moreover, that it was not competent for the defendants, by any evidence on their part, to contradict this "determination" of the commissioner of internal revenue. But the court ruled that in the present trial, and especially as against the defendants, Benjamin and Williams, solvent sureties in the bond of these distillers, this "assessment list" was not conclu-

sive proof of the amount of taxes really due; and that it was competent for the defendants to show, by other evidence, either that the amount assessed was not due, or that no amount was due, or that some other amount, and what, was really due. After this ruling, the trial proceeded on evidence produced by the parties on each side. The government showed that there had been found in New York and elsewhere 219,720 gallons of rectified spirits which had come from the rectifying-house of M. & E. Myers; whereas they had reported and paid taxes on only 193,119 gallons—an excess of 26,100 gallons, or 607 barrels, thus appearing against them; this excess calling for $18,270 of taxes more than they had paid, they having paid but $135,183; whereas there had accrued on 219,720 gallons the gross sum of $153,800. In short the government showed that 607 barrels had gone from the rectifying-house more than had been reported, and tax paid; on which $18.270 more of taxes were due than had been paid. But the government produced no evidence to show that an excess as large as 68,400 gallons (equivalent to 1590 barrels) had been actually distilled, except this "Assessment List, Special No. 2;" or to show that as much as $47,800 was still due of taxes in excess of the taxes that had been paid. The defendants produced no evidence in denial of the fact that 607 barrels more of distilled spirits had been sent from the rectifying-house than had been reported at. and removed from the distillery. They proved that the rectifying-house was about half a mile from the distillery. They produced the two government storekeepers (one of them the day keeper. the other the night) who were on duty during the period from May, 1874, to March, 1875, who testified that they saw no illicit spirits removed from the distillery; that they would have known of the removal. if it had occurred to any extent; and that they did not believe that there had been any removal. Defendants proved that these witnesses were men of good character. They proved by all the men (save one) who had been employed in the distillery that they had seen no irregular removal, that they must have seen it if it had gone on to any extent, and that they did not believe that there had been any irregular removal. The whereabouts of the single employé not examined was unknown to the defendants. These employés were averred and appeared to be respectable laboring men. Defendants produced evidence tending to show that whatever frauds were practiced were practiced at the rectifying-house; that there was nothing in the regulations of the government to render it impracticable for barrels of rectified spirits to be sent from the rectifying-house containing less, by 5 to 8 gallons each, than called for by the gaugers' marks and stamps; an average short-filling of four gallons a barrel on 193,119 gallons (4500 barrels) being 18,000 gallons

(418 barrels), which would account for the larger part of the deficiency of 607 barrels charged against them. They adduced evidence tending to show how, in other feasible ways, an additional excess could result between the quantity of spirits dumped from the distillery at the rectifying-house, and the quantity sold from the rectifying-house; and how this could be done consistently with the government's receiving every dollar of the taxes due it on the spirits really distilled; the only fraud practiced being upon the purchasers of the spirits in receiving in the barrels less spirits than the gaugers' marks indicated. They presented evidence to show that all that was necessary to enable the rectifiers to put this fraud upon the public, was that they should be able to influence the government's gaugers in the discharge of their duties; and they presented evidence tending to show that the gaugers who had officiated at their rectifying-house had been as facile as could have been desired, in respect to these matters; and that some of them had been convicted of misdemeanors in connection with this same business. In short, the evidence of the defendants tended to prove that no frauds had been committed at the distillery; that in fact the government had received the taxes due to it on all the spirits which were actually distilled; that whatever irregularities had been committed had been committed at the rectifying-house; and that, even from these irregularities, the government had sustained no loss of taxes really due to it. The jury, on the evidence thus briefly described, took the case into consideration, and found a verdict for the defendants. Whereupon the United States attorney moved that the verdict be set aside as contrary to the law and the evidence. He moved for a new trial on this ground, and also because of the misruling of the court in admitting evidence at the trial in contradiction of the certificate of the commissioner of internal revenue, given in "Assessment List, Special No. 2," to the effect that he had "inquired, determined, and assessed" that $47,800 was due.

L. L. Lewis, U. S. Atty.
John S. Wise and John Lyon, for defendants.

HUGHES, District Judge. The first question arising upon the motion for a new trial is, whether the court erred in ruling that the "determination" of the commissioner of internal revenue was not conclusive upon the jury in the trial of this cause.

I. The various acts of congress relating to the internal revenue give ample powers to the revenue officers of the government for the collection of all taxes assessed by law; and the provision which has now taken the form of section 3224 of the Revised Statutes of the United States, prohibits the courts from interfering between collecting officers and taxpayers. The courts are glad to obey this injunction of the law, and are reluctant to interfere with the collection of any taxes assessed by revenue officers. It is necessary to the effective conduct of the government that these taxes be paid as they are assessed; and the courts, whenever they are at liberty to refrain, will refuse to interfere with the collection. It is the duty of citizens to pay the taxes as they are assessed, even though wrong and excessive taxes are levied. Having paid an unjust tax, the law gives the taxpayer a right of action against the collecting officer, to recover back in a court of justice the amount wrongly paid; but it provided, before 1872, that he should first have appealed to the commissioner of internal revenue against the assessment of the local assessor, and that his appeal should have been overruled by that officer. After such appeal and rejection, the law, as it stood before 1872, gave the taxpayer the right to sue the officer who had received the tax for a return of it. The law of December 24th, 1872, c. 13 (17 Stat. 401), abolished the local assessors of internal revenue, and consolidated their duties with those of the local collectors. But it provided that assessments should be made in the first instance by the commissioner of internal revenue, and by so doing, as it seems to me, it virtually abolished the provision, that before a suit could be brought by a taxpayer against the collecting officer, he should have first appealed against the assessment to the commissioner at Washington. For, an appeal to an officer who had already made a final determination against him, would seem to be a mockery. Even, therefore, if this were a suit by M. & E. Myers against the local collector, it would, in my judgment, be competent for them to have shown errors in the "Assessment List, Special No. 2," notwithstanding they might not have appealed from the assessment to the commissioner, and been overruled in their appeal. But this is not a suit of that sort. It is a suit by the government against M. & E. Myers and their sureties; and section 3226 of the Revised Statutes does not apply, even if an appeal to the commissioner of internal revenue as a court of final resort did now lie from a "determination" of this same commissioner as an officer of the revenue. Nor is this present suit one that has been brought in aid of the current collection of the revenue. It was not brought for more than a year after the business of M. & E. Myers ceased. It has not been pressed to trial until nearly three years after that business closed; and the effect of any ruling of the court in the case cannot be to impede or obstruct the prompt collection of the revenue.

I have carefully examined the voluminous laws of congress relating to the internal revenue, and if there is any provision in them which prohibits a court of the United

States, in a suit brought by the government against a taxpayer, from hearing legal evidence on issues of fact without restriction, and from rendering judgment in the course according to the law and the evidence, I have failed to discover it. Certainly no such law has been cited, and I do not believe it to exist. Moreover, I have looked carefully into all the decisions of the federal courts bearing upon this subject, and I find nothing in them to prohibit me from going behind "Assessment List, Special No. 2" in this case, except the cases which were cited at the trial by the United States attorney, of U. S. v. Hodson [Case No. 15,376], and U. S. v. Black [Id. 14,600]. I was much staggered by the able and learned opinion delivered respectively by Judges Hopkins and Shipman, who presided in the trial of these cases; which were actions by the United States against distillers and their sureties, precisely as in the present case; and in which it was held, that, in such actions, the assessment and determination of the assessor was conclusive against the taxpayer, even though there was no express statute to that effect.

It seemed to me, in view of well-settled elementary principles of jurisprudence and civil government, that it would not have been competent for congress to confer judicial functions, in matters of property, upon any officer of the executive department of the government; that judicial functions belong exclusively to the judicial courts of the country, and cannot be divested from the judiciary and transferred to the executive, and that any law to that effect would not only violate that cardinal theory of republican government which keeps distinct, separate, and independent, the executive, legislative, and judiciary departments of government; but would violate the fundamental law of the land (Const. U. S. Amend. 5), which provides that no person shall be deprived of his property without due process of law. In the numerous cases which have been decided by the United States supreme court, in which that court has passed or could have passed directly or incidentally on this question, although it has studied to promote the prompt administration of the revenue laws, and to avoid placing obstructions in the path of revenue officers; yet it has laid down no such principle and made no such ruling, as that a court when a suit has come properly before it, shall not decide it according to law and the evidence of the case. See Insurance Co. v. Ritchie, 5 Wall. [72 U. S.] 541; Philadelphia v. Collector, Id. 731; Nicholas v. U. S., 7 Wall. [74 U. S.] 122, 129; Baltimore v. Baltimore Railroad, 10 Wall. [77 U. S.] 552; U. S. v. Wright, 11 Wall. [78 U. S.] 648; Assessor v. Osbornes, 9 Wall. [76 U. S.] 567; Peabody v. Starke, 16 Wall. [83 U. S.] 240; Collector v. Hubbard, 17 Wall. [84 U. S.] 182; Dandelet v. Smith, 18 Wall. [85 U. S.] 642; Pohlman v. Collector, 20 Wall. [87 U. S.]

189; and Bailey v. Railroad Co., 22 Wall. [89 U. S.] 604. In the present case the ruling in U. S. v. Hodson [supra] and U. S. v. Black [supra] would have perpetrated a monstrous injustice; for here, the government in its proofs did not pretend that there was an excess liable to taxation of more than 607 barrels of spirits, over and above the quantity on which the taxes were paid; or that more than an additional $18,270 of taxes remained due; whereas the commissioner of internal revenue, by a purely perfunctory act, no opportunity having been afforded to the defendants for counter proof or appeal, had "determined" that the excess was 1590 barrels, calling for an additional tax of $47,800. Certainly the sureties of M. & E. Myers ought not, on the palpably erroneous determination of an executive officer in Washington, to be held accountable for nearly 1000 barrels of spirits, and made to pay nearly $30,000 of money which the government itself has offered no proof to show that they are accountable for. No case could be presented of a greater injustice resulting from a vicious ruling than the one now under consideration; and, even if I could find no warrant in the authorities for doing so, I should feel constrained to overrule the cases of Hodson and of Black, on principle. But since those cases were decided the supreme court of the United States has ruled in a manner which I conceive to have been more consistent with the requirements of the ancient tenets of English jurisprudence. The case of Clinkenbeard v. U. S., 21 Wall. [88 U. S.] 65, was, like the present one, an action of debt on a distiller's bond where there was a plea of conditions performed. This very question of the conclusiveness of an assessment had been raised at the trial below; and the judge who had presided in the circuit court had ruled that the assessment, not having been appealed from, was res judicata, and conclusive; and that the defendant was precluded from showing to the contrary. The case arose before the law of December, 1872. It arose while assessments were made by local assessors; while liberal provisions of law allowing taxpayers an appeal and a hearing before these local assessors previously to the collection of taxes, were in force; and while taxpayers were allowed, besides an appeal to the local assessor, a right of final appeal to the commissioner of internal revenue. Well might the law, after making these careful provisions (all now swept away) for the protection of taxpayers against unjust assessments, go on then to command that they should pay the taxes when thus settled, and forbid them to sue for their return until final appeal had been taken to the commissioner.

The case of Clinkenbeard v. U. S. [supra] was a suit by the government on a distiller's bond given in 1868; and, as has already been stated, it had been contended by the government, that, no appeal having been taken to

the commissioner by the distiller, from the assessment sued for, the defendant was precluded from showing that the assessment was erroneous. But the supreme court, after drawing the obvious distinction between a suit by a taxpayer which could not be brought until after appeal, and a suit by the government, said: "No statute is cited to show that the defendant cannot when sued (by the government), set up the defence that the tax was illegally assessed, although he may not have appealed to the commissioner. * * * The decisions of an assessor, like those of all other administrative commissioners, are of a quasi judicial character, and cannot be questioned collaterally, when made within the scope of their jurisdiction. But, if they assess persons, property, or operations not taxable, such assessment is illegal, and cannot form the basis of an action at law for the collection of the tax, however efficacious it may be for the protection of ministerial officers charged with the duty of actual collection by virtue of a regular warrant or authority therefor. When the government elects to resort to the aid of the courts, it must abide by the legality of the tax. When it follows the statute, its officers have the protection of the statute, and parties must comply with the requirements thereof before they can prosecute as plaintiffs." This decision settles the law of the present case, and the objection of the district attorney to the action of the court in admitting evidence to contradict "Assessment List, Special No. 2" is not well taken, and furnishes no ground for setting aside the verdict.

II. As to the facts, there is less reason for setting aside the verdict. The affairs of this distillery have been before me so often, that I have learned to be pretty familiar with the facts of the case. There were two trials before me of the libel for the forfeiture of the distillery, and I believe I have tried one or two of the indictments against the government officers officiating at the distillery and rectifying-houses of M. & E. Myers. We also went through the trial of this case the other day. I can therefore speak with some confidence of its facts. There is no doubt but that the government has proved that M. & E. Myers sent to their customers in several places 607 barrels of spirits over and above the quantity on which they paid the proper taxes; that is to say, the government proves that they paid taxes on about 193,119 gallons of spirits, and they sold to their customers about 219,220 gallons. There is, therefore, but one single matter open to doubt. Did they commit these irregularities as rectifiers or as distillers? As rectifiers, did this excess of 26,100 gallons (607 barrels) represent additional proof spirits sold, upon which taxes were justly due, or did they represent merely the short-fillings of barrels refilled from the rectifying-house, and other frauds practiced by M. & E. Myers on their

customers? The government has failed to produce any evidence proving affirmatively that any irregularities occurred at the distillery. It has failed to show any positive facts occurring on the distillery premises, which could raise a suspicion of the practice of irregularities there. And the defendants have proved as abundantly as there can be proof of a negative that no irregularities were committed there. The only question of evidence, therefore, is, whether the single fact of the existence of 607 barrels in nominal excess of the quantity on which taxes were paid, is a sufficiently strong presumption to warrant the conclusion that the fraud was practiced at the distillery. \Two or three juries, who have had this issue of fact before them, have refused to find a verdict on this presumption; and I think they were right in doing so. Circumstantial evidence is in some cases even stronger than direct testimony; but experience has shown that it is never reliable, unless subjected to certain tests. One of these tests is, that the fact which it goes to establish shall be inconsistent with every reasonable theory which can be conceived in contradiction of it. Is that the case here? I think not. No one who has heard the evidence upon which the jury found for the defendants, can fail to have recognized, not only the possibility, but the probability, that the irregularities indicated by the re-use of 607 barrels, which had been removed regularly from the distillery, was effected by the connivance of the gaugers, and by manipulations at the rectifying-house. My own mind came to that conclusion, after the second or third trial of these Myers Cases in this court; and I have concurred with the juries in their reluctance to find verdicts against the distillery, and against these people as distillers, on the mere presumption that the fraud was committed at the distillery. In this conviction I believe that the verdict of the jury was in accordance with the evidence, and I must decline to award a new trial. I am well persuaded that no jury will ever find a different verdict.